United States District Court
Southern District of Texas
**ENTERED**
March 14, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DANIEL MONTES, JR., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-23-1352 |
| | § | |
| BERTHA A. TIBBS, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM AND ORDER**

Daniel Montes Jr. sued Bertha A. Tibbs, his aunt, for breach of an alleged oral contract to which he was not a party. (Docket Entry No. 1).  He seeks to amend his complaint to add as defendants seven other family member parties to the alleged contract: Ben L. Tibbs, Jose M. Hernandez, Norma E. Hernandez, Elvira H. Ximenes, Robert A. Ximenes, and Raul D. Ortiz. (Docket Entry No. 21-1).  The alleged oral contract was made between Montes's mother, Elizabeth Hudson, and the seven family members, to share in providing financial and physical support for Montes's grandmother.  Montes alleges that the family members breached the contract when they stopped contributing to the cost of support for the care of Montes's grandmother, instead requiring Hudson—Montes's mother—to pay the costs herself.  Montes alleges that as a result, the money that he might inherit in the future from his mother has been reduced.  In preparation for filing this lawsuit, Montes asked Hudson to assign her interest in her claim for breach of the oral contract to him.  Montes then brought suit against the seven family members who allegedly failed to perform under the oral contract they allegedly entered into with Montes's mother, alleging breach of contract, civil conspiracy, and unjust enrichment. (Docket Entry No. 21-1).

Montes has filed a number of proposed amended complaints, although the court has not given him permission to do so. Because Montes is pro se, the court considers the latest one, the February 18, 2024, complaint, (*see* Docket Entry Nos. 21-1, 30), in its analysis.

Tibbs moves to dismiss on the basis that no diversity jurisdiction exists because the assignment of the contract to Montes was improperly done to allow him to sue in federal court, and because the amount in controversy for each of the defendant family members is less than $75,000. (Docket Entry No. 6). Based on the motion, pleadings, and law, the court grants Tibbs's motion to dismiss, with prejudice, because further amendment would be futile.

The court also notes that Montes comes to this court previously labelled as a "vexatious litigant" in prior litigation with many of the same family members named here. The relaxed standard for interpreting the pleadings of pro se litigants does not allow for repeated meritless litigation. Montes may not file further litigation in the Southern District of Texas without seeking advance permission from the Chief Judge of this district or that judge's designee.

The reasons for these rulings are set out below.

## I.    The Legal Standard for Diversity Jurisdiction

Federal courts are courts of limited jurisdiction. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir. 1996)). Title 28 U.S.C. § 1332 states as follows:

The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between
(1) citizens of different States;
(2) citizens of a State and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and
(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.
For the purposes of this section, section 1335, and section 1441, an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.

"Courts may dismiss for lack of subject matter jurisdiction on any one of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party who invokes the jurisdiction of the federal courts bears the burden of showing that jurisdiction is proper. *Hartford Ins. Group v. Lou-Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002).

## II.    Analysis

Elizabeth Hudson, Montes's mother, is a citizen of Texas.  Tibbs and the family members Montes proposes adding to the lawsuit are also Texas citizens.  There is no diversity between the parties to the original contract.  Diversity of citizenship exists between Montes and Tibbs because Montes is domiciled in, and a citizen of, Mexico.  (Docket Entry No. 6 at 2). Tibbs argues that because Montes was not a party to the alleged oral agreement among the siblings, including Hudson, Hudson's assignment of the contract to Montes was an improper attempt to obtain diversity jurisdiction, necessitating dismissal. (*Id.* at 3).

28 U.S.C. § 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined

3

to invoke the jurisdiction of such court." This statute is intended to "prevent the litigation of claims in federal court by suitors who by sham, pretense, or other fiction would acquire spurious status that would allow them to invoke the limited jurisdiction of federal courts." *Nolan v. Boeing Co.,* 919 F.2d 1058, 1067 (5th Cir. 1990); *see Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828–29 (1969) (warning that improper assignment could allow "a vast quantity of ordinary contract and tort litigation [to] be channeled into the federal courts at the will of one of the parties[.]").

Application of § 1359 has "generally been restricted to circumstances involving assignment of interests from non-diverse to diverse parties to collusively create diversity jurisdiction." *Delgado v. Shell Oil Co.*, 231 F.3d 165, 178 (5th Cir. 2000). In determining whether diversity jurisdiction has been created in an improper or collusive manner, courts consider the following factors: "(1) whether there was nominal or no consideration involved in the assignment; (2) whether the assignee had any previous connection to the assigned claim; (3) whether there was a legitimate business reason for the assignment; (4) whether the timing of the assignment suggests it was merely an effort to secure federal diversity jurisdiction; (5) whether the assignor exercises any control over the conduct of the litigation; and (6) whether the assignor retains any interest in the action such as receiving a portion of the assignee's recovery." *Hytken Fam. Ltd. v. Schaefer*, 431 F. Supp. 2d 696, 699–700 (S.D. Tex. 2006) (citing *Long & Foster Real Estate, Inc. v. NRT Mid–Atlantic, Inc.,* 357 F.Supp.2d 911, 922–23 (E.D.Va.2005) (collecting cases); Wright & Miller, 14 FED. PRAC. & PROC. § 3639 (3d ed. 1998)).

Montes's complaint explains the assignment as follows:

When Daniel Montes, Jr. found out that his Mother Elizabeth H. Hudson used his inheritance money of at least $178,440 USD to make up for the defendants' intentional joint breach and shortfall, that he DID FLIP OUT on his aunts and uncle, and he immediately asked for his Mother Elizabeth H. Hudson to assign him the entire debt owed her, and he then immediately filed this federal civil action against all eight Defendants . . .

4

(Docket Entry No. 21-1 at ¶ 37). Neither the complaint nor the assignment document show any consideration for the assignment, weighing in favor of finding an improper assignment.

Montes argues that he had a legitimate reason to be assigned Hudson's breach of contract claim.  He alleges, and argues, that when his aunts and uncles refused to contribute to their mother's care, and Hudson had to take on all the expenses of caring for his grandmother, Hudson had to spend money that Montes might have inherited.  Under Texas law, loss of inheritance is considered a valid basis only for a claim in a wrongful death suit in which the "plaintiff shows that the decedent (1) would have enhanced his estate by some amount by saving some of his earnings or by prosperous management of his investments, and (2) would, in all reasonable probability, have left that amount upon his natural death to the plaintiff." *Moorhead v. Mitsubishi Aircraft Int'l, Inc.*, 828 F.2d 278, 290 (5th Cir. 1987).  Montes has not cited, and the court has not found, a basis for a damages recovery for the reduction in the size of a possible future inheritance, when the individual giving the inheritance is still alive and making financial decisions on how to spend her money.  There is also no complaint allegation or any other indication that Montes was intended as a third-party beneficiary of the alleged agreement. *See Janvey v. Alguire*, 847 F.3d 231, 243 (5th Cir. 2017) ("a third party is bound only if the intent to make someone a third-party beneficiary is clearly written or evidenced in the contract." (internal quotations omitted)).  Because Texas law regards the kind of claim Montes makes as speculative, this claim weighs in favor of finding an improper assignment.

The next factor, the timing of the assignment, weighs heavily in favor of finding an improper assignment. Montes's complaint makes clear that he received the assignment in order to file suit, because his mother "didn't have the emotional energy to collect what her siblings and their spouses owed her." (Docket Entry No. 21-1 at ¶ 85). Montes states that as soon as he received

the assignment, he filed this federal action. (*Id.* at ¶ 37).  Finally, while it is unclear what role Hudson is currently playing in the case or whether she will receive a benefit should Montes win, Montes has stated that she is "willing to be deposed, and or testify" and "is a material eyewitness." (*Id.* at ¶ 25).  Viewing these factors in the light most favorable to Montes, and given the lack of concrete information about Hudson's involvement in the case, the final two factors can be considered neutral.

The factors relevant to determining improper assignment of the oral contract to Montes are neutral or weigh in favor of finding improper assignment.  Montes asked Hudson for the assignment so he could file suit.  The parties to the alleged oral contract are Montes's mother, aunts, and uncles; Montes has no present interest in the contract. Montes cannot support federal diversity jurisdiction on the basis of the assignment of his mother's claim for breach of contract. Adding other parties to the contract as defendants would not change this deficiency.

Because the improper assignment means that this court lacks diversity jurisdiction, the issue of the amount in controversy or other grounds raised for dismissal need not be reached.

## III.   **Vexatious Litigant**

"The district court has the power under 28 U.S.C. § 1651(a) to enjoin litigants who are abusing the court system by harassing their opponents." *McMullen v. Cain*, 17-CV-103, 2017 WL 4510594, at *2 (W.D. Tex. Feb. 23, 2017) (quoting *Harrelson v. United States*, 613 F.2d 114, 116 (5th Cir. 1980)), *report and recommendation adopted*, 17-CV-103, 2017 WL 4506814 (W.D. Tex. June 22, 2017).  "A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008).  "The court's power to enter such orders flows not only from various statutes and rules relating to sanctions, but the inherent power of the court to protect its jurisdiction and

judgments and to control its docket." *Farguson v. MBank Houston, N.A*, 808 F.2d 359, 360 (5th Cir. 1986). Such an injunction would bar a litigant from filing further actions without first obtaining leave from the court. *See Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1115 (5th Cir. 1986). A pre-filing injunction "must be tailored to protect the courts and innocent parties, while preserving the legitimate rights of litigants." *Id.*

Tibbs asks the court to recognize that Montes is a vexatious litigant. (Docket Entry No. 6). Montes has been found to be a vexatious litigant in Tarrant County, Dallas County, and the Western District of Texas. *See Elvira H. Ximenes, et al. v. In re: Ricardo Perez Hernandez*, No. 15-cv-855, Docket No. 11 (W.D. Tex. Oct. 16, 2015). The suits resulting in finding Montes a vexatious litigant apparently involved the same defendants that Montes sues here. The court finds that Montes is a vexatious litigant and bars him from filing further pleadings or actions in the Southern District of Texas without the prior written permission of the Chief Judge of the United States District Court for the Southern District of Texas or his or her designee.

Finally, Tibbs asks the court to fine and incarcerate Montes for contempt. (Docket Entry Nos. 6 at 7, 10 at 2). This step is unwarranted, and the request is denied.

## IV.  Conclusion

Montes's claims are dismissed. Montes is declared a vexatious litigant in the United States District Court for the Southern District of Texas. Final judgment and an order prohibiting Montes from filing suit without requisite permission is separately entered.

SIGNED on March 14, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

7